FILED
CLERK

3:56 pm, Apr 25, 2024

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
DANIEL MILLER,

                Petitioner,          MEMORANDUM AND ORDER

    -v-                        20-cv-1546 (JS)

DARWIN E. LACLAIR,

                Respondent.
------------------------------------X
APPEARANCES

For Petitioner:     Daniel Miller, Pro Se
                    207 West Broadway
                    Inwood, New York  11096

For Respondent:     Cristin N. Connell, Esq.
                    Nassau County District Attorney's Office
                    262 Old Country Road
                    Mineola, New York  11501

SEYBERT, District Judge:

        Following his guilty plea, on June 17, 2015, Petitioner Daniel Miller ("Petitioner" or "Miller"), was convicted of Criminal Sexual Act in the First Degree (New York Penal Law [hereinafter, "Penal Law"] § 130.50[2], a class B felony), Kidnapping in the Second Degree (Penal Law § 135.20, a class B felony), two counts of Attempted Criminal Sexual Act in the First Degree (Penal Law §§ 110, 130.50[2], a class B felony), three counts of Sexual Abuse in the First Degree (Penal Law § 130.65[2], a class D felony), and four counts of Facilitating a Sex Offense with a Controlled Substance (Penal Law § 130.90, a class D felony). (Plea Tr. ECF No. 9-8, at 14-22; Conviction, ECF 1-1, at 2-3.)

After serving an aggregate prison term of nine years, Miller is presently on 10-year post-release supervision.

Before the Court is Petitioner's <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") (hereafter, "Petition") raising four grounds for relief. (Petition, ECF No. 1.) Respondent Darwin E. LeClair ("Respondent") opposes the Petition, (Opp'n, ECF No. 8), to which Petitioner replied. (Reply, ECF No. 14.) For the reasons stated below, the Petition is DENIED in its entirety, and the case is dismissed.

<u>BACKGROUND</u>[1]

I.   <u>The Offensive Conduct and Pre-Plea Proceedings</u>

On January 3, 2012, in Inwood, New York, Petitioner gave drug-laced alcohol to a 17-year-old minor (hereafter, the "Victim"). (Plea Tr. at 14-16.) He then subjected the Victim to repeated unconsented sexual acts, which occurred at both a store owned by Petitioner and Petitioner's residence. (<u>Id.</u> at 16-17.) For this conduct, Miller was charged by indictment.[2]

Thereafter, Petitioner was subjected to competency hearings pursuant to New York Criminal Procedure Law ("C.P.L.") §

---

[1]  The general overview of the facts is adduced from the Petition and the underlying record, with, where necessary, details added (as cited).

[2] Subsequently, Petitioner, along with his mother and sister, was charged with conspiring to kill the Victim. (<u>See</u> Opp'n at ¶ 7.)

730:30 (hereafter, the "Competency Hearings"); ultimately, he was found competent to stand trial.[3]  (Feb. 6, 2014[4] Decision, ECF No. 9-5.)

While the Competency Hearings were ongoing, on July 22, 2013, Petitioner filed a <u>pro se</u> suppression motion seeking to suppress jailhouse calls made between himself and his sister, arguing the calls were covered by the attorney-client privilege because his sister had his power of attorney.  (July 22, 2013 Suppression Mot., ECF No. 9-7.)  In the same motion, Petitioner also sought to change venue to the Vatican and accused the prosecutor assigned to his other criminal case "of trying to assassinate [his mother and sister] by having the drains [in their home] plugged up immediately prior to Hurricane Sandy" and threatening his family.  (<u>Id.</u> at 9.)

Then, on July 31, 2013, Miller filed a <u>pro se</u> letter complaining of "ethical misconduct" against the prosecutor on his case, accusing the prosecutor of coercing the psychiatrist who performed the competency examination "into falsifying a medical finding."  (July 31, 2013 Letter Compl., ECF No. 9-7, at 1-4.)  In

---

[3]  Among other things, the evidence adduced at the Competency Hearings showed Petitioner intended to feign mental illness.  (<u>See</u> ECF Nos. 9-1, 9-2, 9-3, 9-4.)

[4]  The Competency Decision was dated February 4, 2014, but was entered and filed on February 6, 2014.  (<u>See</u> ECF No. 9-5 at ECF p.3.)

his letter, Miller also accused the prosecutor of falsely representing to the court that the previously assigned judge authorized the release of defendant's jailhouse calls to the examining doctors. (Id. at 2, 5.) He further claimed this alleged misconduct was "part of a conspiracy [by prosecution] to cause substantial physical harm to [him] and [his] family." (Id. at 5.)

II. The Plea and Sentence

On April 21, 2015, Petitioner entered a guilty plea to all counts of the indictment, with the State having withdrawn one charge. (Plea Tr. at 7:2-22:7.)[5] As part of the plea agreement reached on the indictment, Petitioner waived his right to appeal, and the court made a commitment to sentence Petitioner to an aggregate nine-year prison term followed by 10 years of post-release supervision on the count of criminal sexual act in the first degree, to be served concurrently with the same and lower terms the court imposed on the remaining counts.[6] (Id. at 11:22-12:24.) Had Miller decided to go to trial, he would have been

---

[5] At the April 2015 plea hearing, Miller also: accepted the court's offer to plead guilty to all the counts on a separate indictment, i.e., Indictment No. 1090N-2012, which charged him with the conspiracy to commit murder of the Victim; and, pleaded guilty to one count of second-degree grand larceny and three counts of third-degree larceny in full satisfaction of a third indictment, stemming from unrelated fraud allegations. (Plea Tr. at 22-32.)

[6] At his subsequent sentencing, the court ordered Miller's sentences on his two other indictments to run concurrently to the aggregate sentence of nine years followed by 10 years of post-release supervision it imposed on the first indictment.

exposed to the maximum sentence of 25 years of imprisonment.  (<u>Id.</u> at 11:18-19.)  During his plea, Miller allocuted to each count; notably, during said allocution, Miller corrected factual allegations and made clarifications on the record.  (<u>Id.</u> at 14:14-22:6.)  He also waived his right to appeal, confirming he discussed the waiver with his attorney and was giving up this right voluntarily.  (<u>Id.</u> at 10-11.)

Having made no attempt to withdraw his plea, on June 16, 2017, Miller, appeared for sentencing with the same counsel who represented him at his plea proceeding.  As promised, the court sentenced Miller to the concurrent terms of nine years of imprisonment on the counts of first-degree criminal sexual act, attempted criminal sexual act in the first degree, and kidnapping in the second degree, followed by 10 years of post-release supervision, to be served concurrently with lesser sentences imposed on other counts of the indictments.  (Sent'g Tr., ECF No. 9-9, at 6-7.)  Neither Petitioner nor his attorney objected to the imposed sentence.

III. <u>The Appeal</u>

Notwithstanding his appeal waiver, on November 20, 2017, Petitioner appealed his conviction to the Appellate Division, Second Department ("Appellate Division").  (Appellant's Br., ECF No. 1-10.)  Appearing <u>pro se</u>, in sum, Miller argued: (1) his appeal waiver was not made knowingly, voluntary, or intelligently; (2) he

preserved his right to appeal because N.Y. Penal Law § 70.45, the post-release supervision statute (hereafter, the "State PRS Statute"), was unconstitutional on its face and as applied to him; and (3) his counsel was ineffective for failing to advise him of all the collateral consequences of the plea.  (Id. at 4-21.)[7]

The Appellate Division found, "contrary to [Miller's] contentions, the Supreme Court's oral colloquy with him regarding the waiver of the right to appeal established that [Miller] knowingly, voluntarily, and intelligently waived his right to appeal." People v. Miller, 166 A.D.3d 812, 813 (2d Dept. 2018).[8] Therefore, the valid appeal waiver precluded the Appellate Division from reviewing Miller's argument regarding the constitutionality of the State PRS Statute.  See id.  The court also held, because he did not move to dismiss or withdraw his plea or otherwise raise the issues of the alleged involuntariness of his plea before the lower court, Miller was procedurally precluded from doing so on appeal.  See id.  Furthermore, the Appellate Division found Miller's ineffective assistance claims relied upon matters outside the record; hence, to properly address them,

---

[7]  On appeal, Petitioner also argued his simultaneous conviction on the counts of kidnapping, sex assault, and facilitating sexual assault with a controlled substance were in violation of the merger doctrine.  (Appellant's Br. at 18-20.)  The Appellate Division did not address the merits of this argument finding it was precluded by Miller's valid guilty plea.  See Miller, 166 A.D.3d at 813.

[8]  Also found in the Case Docket at ECF No. 9-12.

Petitioner must initiate a C.P.L. § 440.10 proceeding.  See id.
Thereafter, Petitioner sought leave to appeal to the New York Court
of Appeals (ECF No. 9-13), which was denied.  See People v. Miller,
33 N.Y.3d 951 (2019).

IV.   Miller's C.P.L. § 440 Motion

        While his appeal was still pending, on August 2, 2018,
Petitioner filed a motion pursuant to C.P.L. § 440.10 to set aside
the verdict and, pursuant to C.P.L. § 440.20, to set aside his
sentence in the state court (hereafter, the "Section 440 Motion").
(ECF No. 9-16.)  He argued his plea was procured by prosecutorial
misconduct, alleging the prosecutor: introduced false testimony to
the grand jury; committed witness tampering; and, withheld Brady
materials from the defense.  (See id.)  He supported his claim
with an "inter-departmental memo" allegedly written by the case
lead prosecutor to the District Attorney (hereafter, the "D.A.
Memo") and an anonymous letter allegedly sent to Miller by "a fair
civil servant" describing instances of prosecutorial misconduct
(hereafter, the "C.S. Letter").  (Exs. B & C, attached to Section
440 Motion.)  Petitioner also argued he was deprived of effective
assistance of counsel because his counsel: failed to utilize the
alleged evidence of prosecutorial misconduct; failed to explain to
Petitioner the collateral consequences of his plea, e.g., the
applicability of the N.Y. Sex Offender Registration Act ("SORA")
and the Sex Offender Management and Treatment Act ("SOMTA"), as

7

well as applicable "Son of Sam Law" requirements to Petitioner; and, did not consult with an expert regarding the effects of the drug Miller used on the Victim.  (Id.)  Further, Petitioner argued the State PRS Statute was unconstitutional; hence, his counsel was ineffective for not advising Miller of same.  (Id.)

Rejecting his arguments, the state court denied Miller's Section 440 Motion in its entirety and without a hearing.  (Section 440 Decision, ECF No. 9-19.)  It found Miller knew about the purported evidence alleging prosecutorial misconduct, having had it in his possession for years; yet, he failed to raise it on the record on multiple occasions, including during his plea allocution.  (Id. at 3.)  Thus, Miller's claims were barred on procedural grounds, and, moreover, if considered on the merits, said claims would "be summarily denied."  (Id.)  As to Miller's ineffective assistance claim based upon a supposed failure-to-advise regarding collateral consequences, because the identical claim was still pending on direct appeal, the Supreme Court could not consider it.  (Id. at 4.)  However, the court further stated this claim was meritless since Miller "ha[d] not offered any sworn allegations that, had he been aware that SORA registration would be required as a result of his plea, he would not have pleaded guilty," and, in any event, he failed to show prejudice.  (Id.)  Nor did he establish a significant likelihood of a SOMTA proceeding being initiated against him.  (Id.)  Finally, the court stated the

failure to advise on the Son of Sam law did not constitute ineffective assistance. (Id. at 5.)  Finally, regarding Miller's challenge to the State PRS Statute, the court found it to be without merit.  (Id.)

On November 30, 2018, Miller filed an application asking for leave to renew and reargue (ECF Nos. 9-21, 9-22), which the court denied (ECF No. 9-24.)  Petitioner then sought leave to appeal to the Appellate Division (ECF No. 9-25), which the state opposed (ECF Nos. 9-26, 9-27, 9-28, 9-29, 9-30).  That application was denied (ECF No. 9-31).  Petitioner then sought leave to appeal in the Court of Appeals (ECF No. 9-32), which the state also opposed (ECF No. 9-33).  Petitioner's application for leave to appeal was summarily denied (ECF No. 9-34).  This Petition followed.

V.    Petitioner's § 2254 Petition

On March 19, 2020, Petitioner timely filed his § 2254 Petition by which he seeks to vacate or set aside his conviction and sentence. (Petition.)  Petitioner raises four claims, which he argues warrants habeas relief, i.e.: (1) his guilty plea was procured by fraud and prosecutorial misconduct; (2) the State PRS Statute is unconstitutional on its face and as applied to him; (3) he is actually innocent of the crimes to which he pleaded guilty; and (4) he received ineffective assistance of counsel because his

attorney failed to advise him of various collateral consequences of his guilty plea.  (Id. at 1-20.)

Respondent argues all Petitioner's claims should be denied as they are either procedurally barred or are wholly without merit. (Opp'n.)  In reply, Petitioner primarily addresses Respondent's position that the plea was knowing, voluntary and intelligent by reiterating his insistence that if he knew about the SORA consequences, he would not have entered a guilty plea. (Reply at 1-9.)  Petitioner is no longer incarcerated, but is presently on post-release supervision. (See ECF No. 34.)

Legal Standards

I.   Section 2254 Standard of Review

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002).  Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court, when considering a claim that was decided on the merits in a state court proceeding, may grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) "based on an unreasonable determination of the facts in light of

10

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000); see also McBride v. Perez, No. 13-CV-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25, 2015) ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). The requirements set forth by the AEDPA are strictly construed and, by design, establish a barrier to federal habeas relief founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the laws of the United States." Burt v. Titlow, 571 U.S. 12, 19 (2013) (internal quotation marks and citation omitted).

Under § 2254(d)(1), a state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's]

cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court] precedent." Williams, 529 U.S. at 405-06. "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams, 529 U.S. at 412) (alteration in original). An "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08. "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (internal quotation marks and citations omitted).[9]

II.  Procedural Bars to Federal Habeas Review

    A.  Failure to Exhaust

       A habeas petition will not be reviewed by the district court unless "the applicant has exhausted the remedies available

---

[9]  As Miller does not appear to invoke the second subsection of § 2254(d)--the "unreasonable determination of the facts"--the Court need not address that applicable legal standard.

12

in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).
Exhaustion of the state remedies requires a petitioner to "fairly
presen[t] federal claims to the state courts in order to give the
State the opportunity to pass upon and correct alleged violations
of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364,
365 (1995) (internal quotation marks and citation omitted;
alteration in original). The state courts must have had "the first
opportunity to hear the claim sought to be vindicated in a federal
habeas proceeding," for there to have been exhaustion of state
remedies. Picard v. Connor, 404 U.S. 270, 276 (1971). To
accomplish this, a state prisoner must "present the state courts
with the same claim he urges upon the federal courts." Id.

> Because the exhaustion doctrine is designed to
> give the state courts a full and fair
> opportunity to resolve federal constitutional
> claims before those claims are presented to
> the federal courts . . . state prisoners must
> give the state courts one full opportunity to
> resolve any constitutional issues by invoking
> one complete round of the State's established
> appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). In New York, a
defendant must exhaust his claims by seeking leave to appeal in
the New York Court of Appeals. See Morgan v. Bennett, 204 F.3d
360, 369 (2d Cir. 2000).

    B.   State Procedural Requirements

        A federal court "may not review federal claims that were
procedurally defaulted in state court — that is, claims that the

13

state court denied based on an adequate and independent state procedural rule." Davila v. Davis, 582 U.S. 521, 527 (2017); see also Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) ("[F]ederal courts may not review the judgment of a state court that 'rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision.'" (quoting Harris v. Reed, 489 U.S. 255, 260 (1989))). This principle serves to "ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A state procedural rule is adequate if it is "firmly established and regularly followed by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks and citation omitted). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar." Harris, 489 U.S. at 261-63, 265 n.12. Further, a state court's reliance on an independent and adequate procedural bar forecloses habeas review even if the state court also rejected the claim on the merits in the alternative. See, e.g., id. at 264 n.10 (explaining "a state court need not fear reaching the merits of a federal claim in an alternative holding" where it "explicitly

invokes a state procedural bar rule as a separate basis for [its] decision" (emphasis in original)); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."); Nowakowski v. New York, No. 13-CV-3709, 2018 WL 6421056, at *6 (E.D.N.Y. Dec. 6, 2018) (noting "[t]he bar applies even where the state court has also ruled in the alternative on the merits of the federal claim" (internal quotation marks and citation omitted)).

Notwithstanding the existence of a procedural bar to a claim under state rules, "a federal court may still review the claim on the merits [1] if the petitioner can demonstrate both cause for the default and resulting prejudice, or [2] if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice." Petronio v. Walsh, 736 F. Supp. 2d 640, 654 (E.D.N.Y. 2010) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)). As to the cause and resulting prejudice avenue, a "[c]ause may be demonstrated with 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel.'" Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray v. Carrier,

477 U.S. 478, 488 (1986) (citations omitted)).[10] As to prejudice, a petitioner must demonstrate more than "a possibility of prejudice," but rather that the errors below "worked to his actual and substantial disadvantage." Murray, 477 U.S. at 494 (internal quotation marks and citation omitted; emphasis in original).

"The miscarriage of justice exception is concerned with actual as compared to legal innocence." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (internal quotation marks and citation omitted). By clear and convincing evidence, the petitioner must demonstrate he is actually innocent, and must support his claims "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). In the present case, Petitioner brings a freestanding actual innocence claim, for which the standard is higher than the one in Schlup. (See infra DISCUSSION, Part III.)

                              ***

---

[10]   Although ineffective assistance of counsel may, in some circumstances, constitute cause for a default, the claim for ineffective assistance "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" Edwards v. Carpenter, 529 U.S. 446, 452 (2000) (quoting Murray, 477 U.S. at 489); see also Pitre v. Griffin, No. 16-CV-6258, 2016 WL 7442653, at *11 (E.D.N.Y. Dec. 26, 2016) ("[T]he ineffective assistance claim must itself have been exhausted in the state court.").

Finally, "[t]he Court is mindful that, as with all <u>pro se</u> pleadings, a habeas petition filed <u>pro se</u> is to be construed liberally." <u>Crowder v. Ercole</u>, No. 09-CV-3401, 2012 WL 5386042, at *2 (E.D.N.Y. Nov. 2, 2012) (citation omitted); <u>see also</u> <u>Alonge v. Chappius</u>, No. 12-CV-542, 2019 WL 1642449, at *6 (E.D.N.Y. Apr. 16, 2019) ("[T]he court must interpret petitioner's pleadings as raising the strongest arguments they suggest"). However, <u>pro se</u> status "does not exempt a party from compliance with relevant rules of procedural and substantive law." <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citation omitted).

<u>DISCUSSION</u>

The Court addresses each ground upon which Petitioner challenges his state court conviction, <u>i.e.</u>: (1) his guilty plea was not voluntary, knowing and intelligent because it was procured by fraud and prosecutorial misconduct; (2) the State PRS Statue is unconstitutional on its face and as applied to him; (3) he is actually innocent of the crimes of which he was convicted; and (4) he received ineffective assistance of counsel because his attorney failed to advise him of all collateral consequences of pleading guilty. (Petition at 1-19.)[11]

---

[11] To the extent Petitioner requests an evidentiary hearing, after a thorough review of Petitioner's submissions and the state court record and transcripts, the Court finds that, in accordance with Rule 8 of the Rules Governing Section 2254 Cases, an evidentiary

I.   <u>Ground One:   Petitioner's Guilty Plea and His Claim of</u>
     <u>Prosecutorial Misconduct</u>

          As he did in his Section 440 Motion, here, Petitioner
claims his plea--and, therefore, subsequent conviction--was
procured by prosecutorial misconduct.   (Petition at 5-6; <u>cf.</u>
Section 440 Motion at ¶¶ 23-34, 48, 53-55.)   Petitioner's argument
is primarily premised upon two documents:   the purported C.S.
Letter asserting the assigned prosecutor "knows that the witness
lied in the sex abuse case" (<u>id.</u> at 9); and, the D.A. Memo,
allegedly authored by the lead case prosecutor stating the Victim
consumed "a handful of pills" on his own before meeting with
Petitioner.   (<u>Id.</u> at 8.)   In opposition, Respondent argues the
state court properly determined this claim was procedurally
barred; as such, the claim should not be reviewed by this Court.
(Opp'n at 2-6.)

          Indeed, in ruling on this claim in its Section 440
Decision, the state court first highlighted Miller acknowledged he
had been in possession of the C.S. Letter alleging prosecutorial
misconduct "as early as December 13, 2012" and "had multiple
opportunities, including during his plea allocution, to place on
the record his concerns about the [C.S. L]etter and counsel's

---

hearing is not warranted to address Petitioner's claims.   <u>See</u>
<u>Richardson v. Wolcott</u>, No. 6:20-CV-6178, 2023 WL 4999832, at *8
(W.D.N.Y. Aug. 4, 2023).   Hence, Petitioner's hearing request is
denied.

treatment of the [C.S. L]etter [but] failed to do so." (Section 440 Decision at 2-3.) Therefore, relying upon C.P.L. § 440.10(3)(a), the subsection of the statute authorizing a court to deny a Section 440 motion where a defendant unjustifiably failed to raise a relevant issue or matter of which he knew before sentencing when it could have readily been addressed below and thereafter have provided an adequate basis for review, the court ruled this claim was barred on procedural grounds.[12] (Id. at 3.) The court continued that, even if it were to consider the merits of this claim, Miller's Section 440 Motion would be denied observing: there is an issue as to whether the C.S. Letter was genuine; assuming said Letter was genuine, Miller was aware of it well before his plea, thereby "undermining any serious contention that his plea[] was induced by fraud or misconduct"; Miller's counsel "might have very prudently determined" said C.S. Letter

---

[12] In relevant part, C.P.L. § 440.10 (3)(a) provides, the state court may deny a Section 440 motion when:

> Although facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal.

N.Y. C.P.L. § 440.10 (3)(a).

was of limited value; and, "the advantageous plea agreement into which [Miller] entered was better advised." (Id. at 3-4.)

"The Second Circuit has recognized New York's application of C.P.L. § 440.10(3)(c) as an adequate and independent state procedural bar." Evans v. Giambruno, No. 09-CV-6503, 2010 WL 983522, at *5 (W.D.N.Y. Mar. 16, 2010) (citing Murden v. Artuz, 497 F.3d 178, 191-194 (2d Cir.2007) (finding § 440.10(3)(c) "adequate" to serve as procedural bar to federal habeas review of merits of claim of ineffective assistance of counsel given: state court referred explicitly to rule when dismissing claim; state courts regularly applied rule to deny claims that could have been, but were not, raised on previous motions to vacate; defendant did not substantially comply with rule; and, enforcement of rule served legitimate governmental interests)). Having examined the underlying Section 440 Motion papers and the state court's Section 440 Decision, this Court agrees with Respondent that Petitioner's guilty-plea-claim is barred from federal habeas review since the state court's decision regarding that claim was properly based upon C.P.L. § 440.10 (3)(a), an adequate and independent state procedural rule. See Evans, 2010 WL 983522, at *5 ("Because the state court expressly relied on C.P.L. § 440.10(3)(c) in dismissing petitioner's judicial bias claim, it is not reviewable by this Court."); see also, e.g., Young v. McGinnis, 411 F. Supp. 2d 278, 331 (E.D.N.Y. 2006) (finding, where state court found petitioner's

claim was barred from review based upon § 440.10 (3)(a), because "state court invoked a state procedural bar to the review of the merits of petitioner's claim--an independent and adequate state ground--[the federal district court] need not review the merits of petitioner's claims" (citing state cases relying upon § 440.10 (3)(a))); Collins v. Conway, No. 04-CV-4672, 2006 WL 1114053, at *3 (S.D.N.Y. Apr. 26, 2006) ("Petitioner's claims are procedurally barred because these claims were raised by Petitioner in his NYCPL § 440.10 motion, and were dismissed on procedural grounds pursuant to NYCPL §§ 440.10(3)(a) and (c), which federal courts in this circuit have found to be adequate and independent procedural bars for the purposes of federal habeas review." (footnote omitted; collecting cases)).

Moreover, because Petitioner failed to provide an adequate cause for this procedural default and failed to explain the prejudice he would suffer if the Court does not review the claim, the Court declines to review the merits of this claim. (See supra at 15-16 (discussing when a court may still review a petitioner's claim on the merits where, below, the state court ruled said claim was procedurally barred).) Indeed, given his conceded knowledge of the purported C.S Letter and the D.A. Memo, Petitioner was positioned to raise them with the trial court at several stages of the litigation. See, e.g., Collins, 2006 WL 1114053, at *3. To the extent Petitioner attempts to cast blame

on his counsel for failing to raise the C.S. Letter or the D.A. Memo earlier and not filing a motion based on the two documents (see Petition at 5-6), said attempt is unavailing; by Petitioner's own statements in his Section 440 Motion that, after discussing the matter with him, counsel "was leery of presenting them because he had no way of authenticating them," Petitioner has eviscerated his claim.[13] (Section 440 Motion, ¶ 47.)  In any event, counsel is not deemed ineffective for declining to make frivolous motions and to put forward evidence he cannot determine to be authentic. See Warren v. United States, No. 10-CV-4114, 2012 WL 3861231, at *9 (E.D.N.Y. Aug. 30, 2012) (finding counsel not ineffective for failing to make groundless motion).

Nor is Petitioner able to establish prejudice by this Court's non-review of this claim.  Since the alleged prosecutorial misconduct pre-dated his guilty plea, said claim is extinguished by Petitioner's knowing, intelligent and voluntary plea.  See Alston v. Ricks, No. 01-CV-9862, 2003 WL 42144, at *7 (S.D.N.Y. Jan. 7, 2003) ("[A] guilty plea extinguishes the ability of a habeas petitioner to raise a claim of misconduct before a grand

---

[13]  Likewise, the Court finds Petitioner's position here to be spurious when considering his zealous participation in his underlying criminal case, including, for instance, his interjection of factual corrections during his plea allocution. Thus, as the state court astutely observed, Petitioner was well-aware of, and could have raised, the C.S. Letter and D.A. Memo at various points during his criminal case.  This Court will not entertain his late attempts to do so now.

jury."). Indeed, during his plea, Petitioner not only allocuted to the crimes of which he was accused, he provided details of how the crimes were committed, including correcting the prosecutor regarding how, exactly, he assaulted the Victim. (Plea Tr. at 17-18, 20.) Petitioner's sworn unambiguous statements during his plea allocution, as well as his voluntarily providing details regarding and correcting prosecutorial statements about the commission of his assault, which clearly demonstrates Petitioner's confidence and ability to self-advocate and to bring issues to the court's attention, stands in stark contrast to his inexplicable six-year-long silence regarding alleged pre-plea prosecutorial misconduct; it eviscerates any contention Petitioner would be prejudiced by this Court's non-review of his claim.

Finally, this Court's non-review of this procedurally barred claim will not result in a fundamental miscarriage of justice, which is available only where the alleged constitutional violation likely caused a conviction of an "actually innocent" person. See Schlup, 513 U.S. at 321-22; (see also supra at 16 (discussing the miscarriage-of-justice exception)). One who makes such a claim has a high burden to meet and such claims are "rarely successful." Id. at 324.

To begin, Petitioner's claim of actual innocence is contradicted by his unequivocal admissions of guilt which he provided under oath during the plea proceeding and his valid guilty

plea.  <u>Cf.</u> <u>Doe v. Manfee</u>, 391 F.3d 147, 165-66 (2d Cir. 2013) (holding district court erred when it considered petitioner's habeas testimony as reliable evidence of actual innocence given petitioner's prior admission of guilt in state court); <u>see also</u> <u>Raymond v. New York</u>, No. 17-CV-6383, 2019 WL 168561, at *12 (E.D.N.Y. Jan 11, 2019) (rejecting petitioner's claim of actual innocence where claim was belied by his sworn acknowledgement of criminal conduct at guilty plea); <u>Granados v. Singas</u>, No. 16-CV-2212, 2016 WL 6205800, at *6 (E.D.N.Y. Oct. 24, 2016) (stating petitioner's claim of actual innocence was "especially unconvincing" after petitioner admitted his guilt to police and later at his guilty plea).

Furthermore, Petitioner has not "support[ed] his allegations of constitutional error with new reliable evidence-- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented [earlier]." <u>Schlup</u>, 513 U.S. at 324. Rather, as stated, <u>supra</u>, the documents he proffers in support of his prosecutorial misconduct allegations are wanting, being unauthenticated and, likely, ingenuine.  For example, as Respondent aptly highlights, the D.A. Memo contains multiple facial deficiencies. (Opp'n at 9 (identifying multiple grammatical and syntactic errors; calling attention to D.A. Memo being printed on a Nassau County form (last revised in 1984) and not, as would be appropriate, on a District

24

Attorney's Office form).)  Moreover, Respondent provided the Court with an affidavit from the prosecutor who purportedly authored the D.A. Memo, who unequivocally disavowed authoring said Memo or having any knowledge of the facts alleged in it.  (Rosenbaum Aff., Ex. 1, ECF No. 8-1, underlined attached to Opp'n.)  And, as to the C.S. Letter, Affiant Rosenbaum further denies the allegations in said Letter, reiterating she was--and remains--unaware of any false evidence having been presented to the grand jury in Petitioner's underlying criminal case and is unaware of the existence of any alleged exculpatory evidence.  (Id.)  Hence, Petitioner has failed woefully to meet his high burden warranting review of his procedurally barred claim.

II.  <u>Ground Two:  Alleged Unconstitutionality of the State PRS Statute</u>

Petitioner next claims he is entitled to habeas relief because the State PRS Statute is unconstitutional. (Petition at 12.)  As he did in state court, Petitioner contends the State PRS Statute, N.Y.P.L. § 70.45, violates due process, separation of powers, and the Sixth and Fourteenth Amendments; thus, as a consequence, the imposition of his 10-year post-release supervision is unconstitutional. (See Appellant's Br.[14] at 6-14.)

---

[14]  Petitioner incorporates by reference the arguments he raised in state court. (See Petition at 12 (citing, <u>inter alia</u>, Appellant Br.).)

Petitioner relies upon Apprendi v. New Jersey, 530 U.S. 466 (2000), in support of his position. (See id.)  The Court is unpersuaded.

As an initial matter, in state court, both on direct appeal and in his Section 440 Motion, Petitioner advanced his unconstitutionality argument relying upon Apprendi. (See id.; see also 440 Motion Support Memo at ¶¶ 77-78.)  Said reliance was to no avail.  First, the Appellate Division found Miller's unconstitutionality claim was precluded by his valid appeal waiver; therefore, it declined to reach its merits. See Miller, 166 A.D.3d at 814.  However, finding it was not bound by Petitioner's appeals waiver, the New York Supreme Court considered Miller's unconstitutionality claim on the merits and rejected it; hence, it refused to set aside Miller's sentence, inclusive of the post-release supervision. (Section 440 Decision at 5.) Thereafter, both the Appellate Division and Court of Appeals declined Petitioner's requests for review. (ECF Nos. 9-31, 9-34.)

Given this relevant procedural background, this Court's review is limited to determining whether the state courts' determinations "resulted in a decision that was contrary to, or involved in an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of United States." 28 U.S.C. § 2254(d)(1).  Such limited review demonstrates no such decision.

26

Petitioner's reliance upon Apprendi is misplaced; it does not support his theory that the State PRS Statute is unconstitutional.  In Apprendi, the Supreme Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury." 350 U.S. at 490 (emphases added). Importantly, it did not call into question "the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."  United States v. Booker, 543 U.S. 220, 233 (2005) (emphases added).

The subject State PRS Statute provides that when a court imposes a determinate sentence, like the one imposed upon Petitioner, "it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision as determined pursuant to this article."  N.Y.P.L. §70.45(1).  As is relevant to Petitioner, "[t]he period of post-release supervision for a determinate sentence imposed for a felony sex offense . . . shall be not less than ten years nor more than twenty-five years whenever a determinate sentence of imprisonment is imposed pursuant to either section 70.04, section 70.06, or subdivision five of section 70.80 of this article upon a conviction of a class B violent or non-violent felony sex offense as defined in section 70.80 of this article."  Penal Law § 70.45(2-a)(i). Therefore, since the State PRS Statute does not provide a

27

sentencing court with discretion to impose a sentence above the statutory range, Apprendi is inapplicable.   See People v. Jefferson, 70 A.D.3d 721, *1 (2d Dep't 2010) (rejecting as without merit defendant's argument that N.Y.P.L. § 70.45 is unconstitutional since the statute "requires a sentencing court to impose a period of postrelease supervision as part of a determinate sentence" (citing, inter alia, Apprendi)); see also White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.").

To the extent Petitioner further argues the State PRS Statute is unconstitutional as applied to him, that argument is without merit. As highlighted, supra, Petitioner: pleaded guilty to multiple felony counts, including a criminal sexual act in the first degree, a class B felony, in violation of Penal Law § 130.50; was adjudicated as a second felony offender; and, as required under the applicable state law, was sentenced to a determinate term of imprisonment of eight to 25 years on the highest count, followed by a period of post-release supervision of not less than ten years, i.e.,. nine years of imprisonment on the top count, followed by 10 years of post-release supervision.   See N.Y.P.L. §§ 60.05(6), 60.13, 70.00(6), 70.06(6)(a), 70.80(6), 70.45(2-a)(i); (see also. Sent'g Tr. at 10:1-9).   Of import:   The statute under which Petitioner was sentenced did not contain any language permitting

the court to exceed the statutory requirements by imposing any
"enhancements" or by making factual findings; nor did the state
court below engage in any such conduct.  Therefore, the state
court's rejection of Petitioner's constitutionality challenge to
the State PSR Statute was not an unreasonable application of
established federal law.  See White, 969 F.2d at 1383.  The statute
is not unconstitutional on its face or in the manner to which it
was applied to Petitioner.

          To the extent Petitioner raises other arguments in
support of his unconstitutionality claim, the Court finds them to
be without merit.  First, as Respondent aptly argues, Miller's
"argument that if he violates the terms of his post-release
supervision, he faces a sentence which exceeds the statutory
maximum on his C and D felony convictions is incorrect,
hypothetical, and academic."  (Opp'n at 24.)  For the reasons
articulated by Respondent (see id. at 24-25 (explaining: (1)
Miller's "maximum potential sentence is calculated by adding the
determinate term of imprisonment with the period of postrelease
supervision"; (2) no violation has occurred; and (3) Miller's
"aggregate prison and post-release supervision sentence does not
exceed the statutory maximum prison term, much less the combined
statutory maximum")), which the Court adopts and incorporates
herein, the Court agrees.  Second, Miller's contention that the
State PRS Statute violates the separation of powers doctrine is

unavailing because it does not raise a federal claim;[15] the Court concurs with Respondent that in state court, Petitioner made it "explicitly clear he was invoking the separation of powers doctrine under the New York State Constitution and not the United States Constitution."   (Id. at 25 (citing Appellate Br. at 12-13).) Furthermore, because the Supreme Court has never held the State PRS Statute violates the separation of powers doctrine or due process in general, there is no "clearly established Federal law" to support this claim or warrant Miller's requested habeas relief. (Id. (further collecting cases of lower federal courts uniformly finding State PRS Statute—or other similar supervised released statutes—do not violate the separation of powers doctrine).) Third, Petitioner's administration-of-post-release-supervision argument is legally flawed.  As Respondent explains: "A defendant's determinate prison sentence is interrupted by the commencement of post-release supervision and 'held in abeyance until the successful completion of the period of post-release supervision or the person's return to the custody of [DOCCS], whichever occurs first.'"   (Id. at 26 (quoting N.Y.P.L. § 70.45(5)(a)).) Accordingly, "a defendant supervised under post-release

---

[15]   And, to the extent Petitioner argues the State PRS Statute violates the New York Constitution, such a claim is not properly before this Court since is does not raise a federal question.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to examine state-law determinations on state-law questions.").

supervision . . . has not served his full prison term when he is released to post-release supervision." (Id.) Therefore, supervision by the N.Y.S. Department of Corrections and Community Supervision ("DOCCS") is proper and does not offend a defendant's due process rights. In sum, having considered all his arguments in support of his second ground for habeas relief, i.e., the purported unconstitutionality of the State PRS Statute, the Court finds Petitioner is unable to establish his entitlement to the requested relief.

III. Ground Three:  The Claim of Actual Innocence

Petitioner next argues he should have been permitted to argue his actual innocence. (Petition at 13-14.) Respondent retorts this is an unexhausted claim,[16] but, in any event, is not a cognizable habeas claim and is meritless. (Opp'n at 14.)

Having reviewed the state court record, the Court agrees with Respondent that Petitioner did not adequately raise his actual innocence claim and, therefore, failed to exhaust it. (See Opp'n

---

[16] "[T]o properly exhaust his freestanding actual innocence claim, because the claim is based on matters dehors the record, [Petitioner] was required to raise the claim in a motion to vacate his judgment of conviction pursuant to section 440.10 of the Criminal Procedure Law." (Opp'n at 15 (citing Campos v. Smith, No. 15-CV-6580, 2017 WL 1025850, at *2 (E.D.N.Y. Mar. 15, 2017))); see also generally People v. Hamilton, 115 A.D.3d 12, 13 (N.Y. App. Div. 2d Dep't 2014) ("[A] freestanding claim of actual innocence may be addressed pursuant to CPL 440.10(1)(h), which provides for vacating a judgment which was obtained in violation of an accused's constitutional rights.").

at 15-16 (asserting, _inter alia_, "there is no reasonable construction" of Miller's Section 440 Motion "from which one can discern an actual innocence claim" or which were "sufficient to alert the state Supreme Court that he was asserting an actual innocence claim").)  _Cf._ _Bonsley v. United States_, 523 U.S. 614, 623-24 (1998) (holding actual innocence claim means factual innocence and not mere legal insufficiency); _People v. Fraser_, 165 A.D.3d 697 (2d Dep't 2018) (same).  Nonetheless, and notwithstanding his failure to "exhaust the remedies available in" state court, because Petitioner's actual innocence claim lacks merit, as discussed below, the Court declines to stay the Petition (holding it in abeyance for Miller to exhaust this claim in state court) and, instead, denies his request for habeas relief.  28 U.S.C. § 2254(b)(2).

It is well-established that a freestanding, substantive federal constitutional claim of actual innocence has not been recognized by the Supreme Court or by this Circuit.  _See_ _District Attorney's Office for Third Judicial District v. Osbourne_, 557 U.S. 52, 71 (2009) ("Whether [a federal habeas right to be released upon proof of actual innocence] exists is an open question."); _see also_ _Hyman v. Brown_, 927 F.3d 639, 656 (2d Cir. 2019) (holding actual innocence argument plays a "'procedural, not substantive role in [a habeas] case'" (quoting _Rivas v. Fischer_, 687 F.3d 514, 541 (2d Cir. 2012))); _Bryant v. Thomas_, 725 F. App'x 72, 73 (2d

32

Cir. 2018); <u>Perez v. Warden</u>, No. 16-CV-08251, 2018 WL 3421383, at *6 (S.D.N.Y. Jan. 8, 2018) (denying petitioner's freestanding actual innocence claim as not cognizable in a federal habeas claim). Yet, even if that were the case, Petitioner would have to meet a "high standard" to advance his actual innocence claim. <u>Osbourne</u>, 557 U.S. at 71 (recognizing "the difficult questions such a right would pose and the high standard any claimant would have to meet" in advancing an actual innocence claim); <u>see also</u> <u>Castellanos v. Kirkpatrick</u>, No. 10-CV-5075, 2015 WL 7312908, at *8 (E.D.N.Y. Nov. 18, 2015) ("Even assuming <u>arguendo</u> the existence of a freestanding federal claim of actual innocence, the Supreme Court suggested that the threshold showing for such a claim would be extraordinary high." (internal quotations and citation omitted)). However, because the Court has already determined Petitioner's actual innocence claim fails to meet the lower <u>Schlup</u> "gateway" standard applicable to procedural actual innocence (<u>see</u> <u>supra</u> at 23-25), it necessarily follows Petitioner's freestanding actual innocence claim, subject to a higher standard, must also fail. <u>See</u> <u>Fabers v. Lamana</u>, No. 18-CV-2399, 2020 WL 1875288, at *24 (E.D.N.Y. Apr. 15, 2020) (rejecting petitioner's freestanding actual innocence claim where his proof failed to satisfy the lower gateway <u>Schlup</u> standard).

Therefore, while Petitioner's freestanding actual innocence claim is unexhausted, this Court declines to stay the

Petition to permit Petitioner to exhaust same because the claim is without merit.  Accordingly, the Court rejects Petitioner's third ground for granting habeas relief.

IV.  Ground Four:  Ineffective Assistance of Counsel Claim

To establish deficient performance, a petitioner must prove "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984).  Even if a petitioner can show deficient performance, he must also establish prejudice--that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  Further, as a general principle, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  After all, "there are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id.

In the context of a habeas petition, in reviewing the totality of the evidence, the habeas court must "use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).  The Supreme Court has instructed "the question is not whether counsel's actions were reasonable . . .

34

[rather, t]he question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011).  Bearing this deferential standard in mind, it is unsurprising that "the great majority of habeas petitions that allege constitutionally ineffective counsel" fail.  <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001).

Petitioner claims he was denied effective assistance of counsel.  His list of alleged instances of constitutionally deficient performance by his counsel include counsel's <u>not</u>: (1) bringing evidence of prosecutorial misconduct to the state court's attention (hereafter, the "Misconduct Claim");[17] (2) consulting with an expert regarding on the effects of drugs administered to Miller's Victim (hereafter, the "Expert Claim"); and (3) advising Petitioner of the collateral consequences of pleading guilty to the various counts of sexual assault (hereafter, the "Consequences Claim"; collectively, with the Misconduct and Expert Claims, the "Ineffective Claims").  (Petition at 5-6.)  These same Ineffective Claims were raised on direct appeal (<u>see</u> Appellant's Br. at 15-17), and in Petitioner's Section 440 Motion (<u>see</u> Section 440 Motion at ¶¶ 42-78) and were rejected.  The Appellate Division held that

---

[17]  Petitioner's Misconduct Claims is also addressed <u>supra</u> at DISCUSSION, Part I, in relation to Petitioner's claim that his plea and conviction were invalid due to the purported prosecutorial misconduct.

because the Ineffective Claims concerned matters outside the record, it was more appropriately explored via a Section 440 motion. See Miller, 166 A.D.3d at 813. In the context of deciding Petitioner's Section 440 Motion, the state court addressed the merits of the Ineffective Claims and found them to be without merit. (See Section 440 Decision at 4-5.) This Court agrees; employing the "doubly deferential" standard applicable in federal habeas review, see Cullen, 563 U.S. at 189, it finds the state court was correct in concluding counsel's performance did not fall below the generally accepted professional standards and did not prejudice Petitioner.

Moreover, as Respondent astutely argues, "the record amply demonstrates that counsel zealously advocated for his client." (Opp'n at 30.) Indeed:

> [m]ost significantly, even though [Miller] was facing three separate indictments, two of which carried a top count of a class B felony, counsel miraculously persuaded the court to offer a plea whereby [Miller]—a second felony offender—would receive only an aggregate nine-year prison term on all three cases, even though the prosecutor had recommended eighteen years in prison. Notably, had [Miller] gone to trial on the instant indictment and been convicted of the top count, he faced a prison term of up to twenty-five years in prison. See Penal Law § 70.06(6)(a). Further, if [Miller] had proceeded to trial on all three cases and been convicted of the top count in each, he faced an actual prison term of up to thirty years. See Penal Law § 70.30(1)(e). Under these circumstances, counsel's

36

> performance was the hallmark of meaningful representation.

(Id. (citing Belle v. Superintendent, No. 11-CV-0657, 2013 WL 992663, at *13 (W.D.N.Y. Mar. 13, 2013) (petitioner's ineffective assistance claim belied by highly favorable plea)).)  Again, the Court concurs.  Given the highly favorable plea deal secured by counsel, Petitioner's arguments in support of his ineffective assistance claim are inefficacious.  The Court elaborates, below.

As an initial matter, by pleading guilty, Petitioner waived his challenges to counsel's representation which challenges were unrelated to his plea.  See Zamani v. Attorney General, No. 18-CV-1700, 2018 WL 6303820, at *9 (E.D.N.Y. Nov. 30, 2018) (finding, by his knowingly, voluntarily, and intelligently entering a guilty plea, petitioner "has waived his right to challenge aspects of his representation that are unrelated to the validity of the guilty plea itself"); see also, e.g., Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." (citing United States v. Coffin, 76 F.3d 494, 497 (2d Cir.1996))).

As to the Misconduct Claim:  Assuming arguendo no waiver, Petitioner fails to make out an ineffective assistance claim based upon counsel's refusal to move for prosecutorial misconduct.  It

would have been improper for counsel to have so moved given the questionable authenticity of the C.S. Letter and D.A. Memo; to do so would have been to improperly "assist a client in presenting false evidence to the court." People v. Andracles, 4 N.Y.3d 355, 360 (2005). Indeed, in his Section 440 Motion, Petitioner admitted discussing with his counsel the filing of such a motion, who declined to do so because it would have been frivolous. (See Section 440 Motion ¶ 147; see also supra at 22.) Nor did counsel's failure to bring the purported prosecutorial misconduct motion prejudice Petitioner as it had no chance of succeeding. See Aparicio v. Artuz, 269 F. 3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the "wide range of professionally competent assistance" to which Petitioner was entitled." (citing Jameson v. Coughlin, 22 F. 3d 427, 429-30 (2d Cir. 1994); further citation omitted); see also id. at 99 n.10 (holding, where underlying claim is meritless, counsel is not ineffective for failing to raise it).

As to the Expert Claim: Again, since this failure to retain an Expert Claim does not concern the validity of Miller's knowing and voluntary guilty plea, said Claim is waived by the entry of the valid guilty plea. See Parisi, 529 F. 3d at 138. Further, "even if [Petitioner]'s allegation that counsel did not consult a drug expert before [Petitioner] pled guilty were true, [Petitioner] fails to allege, much less establish, that but for

this alleged error, he would not have pleaded guilty." (Opp'n at 31 (citing Hill, 474 U.S. 52, 59 (1985)).) Similarly, Petitioner has not articulated "how consulting with an expert would have produced a different outcome; instead, he merely alleges that the information would have allowed him to 'make an informed decision as to whether the [V]ictim would survive a credibility contest at trial.'" (Id. at 31-32.) Hence, Petitioner fails to advance a Strickland ineffective assistance claim on the basis that counsel's assistance was deficient by failing to retain a drug expert. Indeed, it is well-settled that there are "countless ways to provide effective assistance in any given case." Harrington, 562 U.S. at 106-07 (quoting Strickland, 466 U.S. at 689). Thus, "[r]are are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." Id. (quoting Strickland, 466 U.S. at 689).

As to the Consequences Claim: Petitioner's assertions his counsel was ineffective for failing to advise him of the collateral consequences of his guilty plea (see Petition at 6) is unpersuasive. First, as Respondent highlights, Petitioner was well-aware of the 10-year term of post-release supervision to which he would be subjected. (See Opp'n at 32 (citing Plea Hr'g and Mary Miller Aff.).) Second, the state court's rejection of Petitioner's Consequences Claim was not contrary to, or an unreasonable application of, clearly established federal law as

determined by the United States Supreme Court.  See 28 U.S.C. § 2254(d)(1).  Because the Supreme Court has not yet announced the failure to advise a defendant of non-immigration collateral consequences of a conviction constitutes ineffective assistance of counsel, the state court's denial of Petitioner's ineffective assistance Consequences Claim was not contrary to the clearly established federal law.  See United States v. Nesbeth, 188 F. Supp. 3d 179, 196 (E.D.N.Y. 2016) ("It is an open question . . . under what circumstances, if any, failure of counsel to advise a defendant prior to a plea of at least the critical non-deportation collateral consequences he or she faces, might rise to the level of an ineffective-assistance claim."); see also Stephens v. United States, No. 06-CV-5386, 2007 WL 1233557, at *3 (E.D.N.Y. Apr. 25, 2007) ("Registration as a sex offender is a collateral effect and improper advice as to such a collateral effect does not support an ineffective assistance of counsel claim.").

For completeness, the Court observes Petitioner has failed to put forth how he was prejudiced by the supposed failure of counsel to advise him regarding the collateral consequences of his plea.  However, Strickland requires one establish both the performance prong and the prejudice prong of the required analysis.  See Strickland, 466 U.S. at 687 (instructing a petitioner must satisfy both prongs of the Strickland test); see also id. at 692 ("[A]ny deficiencies in counsel's performance must be prejudicial

40

to the defense in order to constitute ineffective assistance under the Constitution." (emphasis added)); <u>Leftenant v. Attorney Gen.</u>, No. 20-CV-0436, at *11 (E.D.N.Y. Dec. 5, 2023) (stating "[e]ven if a petitioner can show deficient performance, he <u>must</u> also establish prejudice"). Moreover, to establish prejudice in the context of a guilty plea, a petitioner must prove there is "a reasonable probability" that, but for counsel's error, petitioner would not have pleaded guilty, but, instead, would have gone to trial. <u>See</u> <u>Hill</u>, 474 U.S. at 59 (1985). Notably, a "conclusory claim . . . [petitioner] would have gone to trial but for counsel's alleged ineffectiveness, standing alone, does not establish prejudice under <u>Strickland</u>"; rather, a petitioner must "affirmatively prove" he would have gone to trial. <u>Boakye v. United States</u>, No. 09-CV-8217, 2010 WL 1645055, at *4, 6 (S.D.N.Y. April 22, 2010). Because Petitioner has failed in this respect, he cannot maintain his Consequences Claim.

***

To the extent not explicitly articulated herein, the court has considered Petitioner's remaining arguments in support of habeas relief, but finds them to be without merit.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that Miller's Petition (ECF No. 1), is **DENIED** in its entirety. The Clerk of the Court is

directed to: enter judgment in favor of Respondent; dismiss the Petition; close the case; and, mail a copy of this Order to Petitioner at his address of record.

Further, the Court:

(A) Declines to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); and

(B) Pursuant to 28 U.S.C. § 1915(a)(3), certifies that any appeal from this Order would not be taken in good faith, and, therefore, in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated: April 25, 2024
       Central Islip, New York